CORDS and others, Appellants, v. STATE and another, Respondents.

*No. 187.  Argued November 27, 1973.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 405.)

For the appellants there were briefs by *Wickhem, Consigny, Sedor, Andrews & Hemming, S. C.,* of Janesville, attorneys, and *Ray J. Aiken* of Delafield, of counsel, and oral argument by *Robert G. Krohn* of Janesville, and *Mr. Aiken.*

For the respondents there was a brief by *Robert W. Warren,* attorney general, and *Benjamin Southwick,* assistant attorney general, and oral argument by *Michael E. Perino,* assistant attorney general.

WILKIE, J. Four issues are raised in this appeal:

1. Have the defendants waived their right to assert sovereign immunity as a bar to this suit?

2. Can the state of Wisconsin or the Wisconsin department of natural resources be sued directly for injuries allegedly caused by the negligence of state employees?

3. Does the existing Wisconsin statutory pattern deny to the plaintiffs rights secured to them by the Wisconsin Constitution and the fourteenth amendment to the United States Constitution?

4. Does sec. 270.58, Stats., create a cause of action against the state in contract?

1. *Waiver of objection to personal jurisdiction.* Although the question of waiver was not listed as one of the questions raised on the appeal, the issue is presented in the discussion of point four of the plaintiffs' argument in their initial brief at page 37. The plaintiffs state:

"By demurring generally, the defendants raise no procedural objection to the complaint herein, and would therefore appear to waive the possible procedural question arising out of plaintiffs' failure to seek judgment against the state's officers and employees in this action."

The plaintiffs again raised this issue on oral argument. It appears that the defendants first filed a demurrer

on June 13, 1972, which listed as the sole ground of objection that the complaint did not state facts sufficient to constitute a cause of action. On July 21, 1972, the defendants filed an amended demurrer which listed as a second ground of objection that the court lacked personal jurisdiction over the defendants.

The general rule in Wisconsin since the *Holytz Case* [1] removed the substantive defense of governmental tort immunity, is that sovereign immunity is a defense to the personal jurisdiction of the court which can be waived.[2] Objection to personal jurisdiction must be raised specifically or be deemed waived. It is not sufficient to make a general demurrer that the complaint does not state facts sufficient to constitute a cause of action.[3] Therefore, the first demurrer filed by the defendants would not have been sufficient to raise the defense of sovereign immunity and the defendants would have subjected themselves to direct suit. The plaintiffs contend that the filing of an amended demurrer was ineffectual to withdraw the waiver contained in the initial demurrer.

The plaintiffs are contending that a demurrer cannot be amended. In Wisconsin a demurrer is considered a pleading.[4] Corpus Juris Secundum states:

"a. In General

"A demurrer may be amended like any other pleading, and the allowance of an amendment is ordinarily regarded as resting within the sound discretion of the trial court.

---

[1] *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618.

[2] *Kenosha v. State* (1967), 35 Wis. 2d 317, 328, 151 N. W. 2d 36.

[3] *Id.;* secs. 263.06, 263.09, 263.12, 263.16, Stats.

[4] "263.05 **Pleadings by defendant.** The only pleading on the part of the defendant is either a demurrer or an answer. It must be served within 20 days after the service of the copy of the complaint. If a guardian ad litem is appointed for a defendant pursuant to s. 260.22, the guardian ad litem shall have 20 days after his appointment to serve a response to the complaint."

"A demurrer is regarded as a pleading within the purview of a statute providing for the amendment of any pleading, and may be amended like any other pleading. . . .

"b. Time for Amendment

". . . Such an amendment may be allowed at any time before final judgment on demurrer . . . ." [5]

In Wisconsin a party can amend any pleading once as of right if done within twenty days of filing.[6] The amended demurrer in this case was filed more than twenty days after the initial demurrer was filed. Under sec. 269.44, Stats.,[7] the court may amend pleadings in furtherance of justice and upon such terms as may be just.

The record does not reveal that the defendants made any formal motion for leave of the court to amend. However, the amended demurrer was accepted for filing and is part of the record. The order entered by the court stated that the "general demurrer" of the defendants to the plaintiffs' complaint is sustained. However, the

[5] 71 C. J. S., *Pleading*, p. 684, sec. 302.

[6] "263.45 **Amendments of course to pleadings.** Any pleading may be once amended by the party of course, without costs and without prejudice to the proceedings already had, within twenty days after service thereof. But if it shall appear to the court that such amendment was made for the purpose of delay or that the same was unnecessary and the opposite party will thereby lose the benefit of a term at which the action may be tried, the amended pleading may be striken out and such terms imposed as may seem just."

[7] "269.44 **Amendments of processes, pleadings and proceedings.** The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

memorandum decision reveals that the basis of sustaining the demurrer was that the state had not consented to be sued. Thus, as in *Kenosha v. State,* the issue of personal jurisdiction was presented to the court even though the order of the court does not refer specifically to lack of personal jurisdiction as a ground for sustaining the demurrer.

The plaintiffs have not contended that the trial court abused its discretion in allowing an amendment to the demurrer. That issue is therefore not before the court.

2. *Can the state be sued directly in tort?* The plaintiffs urge that this court reconsider its position on sovereign immunity and intervene judicially to correct "an intolerable confusion and anomaly in the law."

In *Holytz v. Milwaukee* [8] this court expressed its disapproval of sovereign immunity by abrogating governmental immunity for tort suits. However, the court made clear that the imposition of substantive immunity did not affect the state's sovereign right under art. IV, sec. 27, of the Wisconsin Constitution, to be sued only upon its consent. The doctrine of procedural immunity as to the state itself should be removed, but this change is directed to the legislature. The judiciary cannot step in where the legislature has failed to act to commence a change in the state's constitution.

In *Forseth v. Sweet* [9] this court said:

". . . While we can agree with the appellant that the legislature has been remiss in its failure to implement art. IV, sec. 27, the fact that that body has the absolute right to proscribe the boundaries of its sovereign immunity should preclude intervention by the judiciary."

And again in *Townsend v. Wisconsin Desert Horse Asso.* [10] the court stated:

---

[8] *Supra,* footnote 1.
[9] (1968), 38 Wis. 2d 676, 689, 158 N. W. 2d 370.
[10] (1969), 42 Wis. 2d 414, 421, 167 N. W. 2d 425.

". . . Whether the state as a sovereign is willing to be sued is a legislative problem. It is for the legislature to declare pursuant to the mandate in art. IV, sec. 27 of the Wisconsin Constitution how and in what respect the state can be sued by a citizen."

The plaintiffs contend that this is a misinterpretation of the nature of sovereign immunity. They call the court's attention to two recent cases in which the Supreme Courts of Indiana and New Jersey have declared by judicial fiat that the states of Indiana and New Jersey are subject to suit with certain exceptions. The defendants are correct in distinguishing these cases. In *Perkins v. State*,[11] the Indiana Supreme Court interpreted a provision of the Indiana Constitution not as a prohibition against suit. Therefore the court felt free to judicially change the common-law doctrine of sovereign immunity. The provision of the Indiana Constitution read:

"Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

Thus the pertinent Indiana provision was permissive and did not vest sole control in the legislature to direct how and in what courts suit could be brought against the state.

In *Willis v. Department of Conservation & Economic Development*,[12] there was no mention of any applicable state constitutional provision. It would appear that sovereign immunity was purely a common-law doctrine in New Jersey and subject to court modification or abolition when it saw fit.

However, in Wisconsin the wording of art. IV, sec. 27, of the Wisconsin Constitution which says that "The legis-

[11] (1969), 252 Ind. 549, 551, 251 N. E. 2d 30.
[12] (1970), 55 N. J. 534, 264 Atl. 2d 34.

lature shall direct . . . ." has always been interpreted as vesting exclusive control over immunity from suit in the legislature. In *Chicago, M. & St. P. Ry. v. State* [13] the Wisconsin Supreme Court said of art. IV, sec. 27:

". . . It is not self-executing, and manifestly was not so intended. Otherwise, the mandate would have been to the courts instead of the legislature, and the consent of the state to be sued for the same causes which would support actions against individual citizens, would have been expressly given. We are of the opinion, therefore, that an action of any kind directly against the state cannot be maintained in this or any other court, unless it is authorized by some statute of the state."

As for statutory consent by the state to suit in tort, this court has found none. Sec. 285.01, Stats., has been interpreted as limited to claims which if valid would render the state a debtor to the claimant. [14] Sec. 270.58 has also been interpreted not to be a consent by the state to be sued in tort. [15]

The plaintiffs thus have raised no new arguments which have not been resolved before, and find themselves, as did the plaintiffs in *Chart v. Gutmann*, "in the unfortunate position of having suffered a wrong for which there is no judicial remedy." [16]

Since *Holytz* ended the doctrine of governmental immunity for local governments, fairness requires a change in the constitutional restriction against tort suits against the state. The constitution should be changed to correct this wrong, but that is a task for the legislature to commence, not the courts.

[13] (1881), 53 Wis. 509, 513, 10 N. W. 560.

[14] *Chicago, Milwaukee & St. P. Ry. v. State, supra,* footnote 13; *Houston v. State* (1898), 98 Wis. 481, 74 N. W. 111; *Holzworth v. State* (1941), 238 Wis. 63, 298 N. W. 163; *Townsend v. Wisconsin Desert Horse Asso., supra,* footnote 10; *Chart v. Gutmann* (1969), 44 Wis. 2d 421, 171 N. W. 2d 331.

[15] *Forseth v. Sweet, supra,* footnote 9, at page 682.

[16] *Chart v. Gutmann, supra,* footnote 14, at page 436.

3. *Constitutionality of Wisconsin statutory scheme.*
The plaintiffs argue that the failure of the state to pro-
vide statutory authorization for their suit denies them
due process and the equal protection of the laws as
guaranteed by the fourteenth amendment to the United
States Constitution and violates art. I, sec. 9, of the
Wisconsin Constitution. All of these constitutional chal-
lenges have been made before and rejected by this court.

Art. I, sec. 9, of the Wisconsin Constitution which
reads:

"Every person is entitled to a certain remedy in the
laws for all injuries, or wrongs which he may receive in
his person, property, or character; he ought to obtain
justice freely, and without being obliged to purchase it,
completely and without denial, promptly and without de-
lay, conformably to the laws."

does not give the plaintiffs a constitutional right to sue
the state. In *Scholberg v. Itnyre* [17] this court stated:

" 'The constitutional guaranty insuring a remedy for
"injuries" to person and property, etc., does not guarantee
a remedy for every species of injury, but only such as re-
sults from an invasion or an infringement of a legal
right or a failure to discharge a legal duty. . . .' "

In *Forseth v. Sweet* this court clearly stated that there is
no "right" of a citizen to hold his sovereign substantively
liable for a tort. [18]

The plaintiffs also contend that while the state may
have a privilege not to consent to suit, it cannot grant the
right to suit in an arbitrary manner. The plaintiffs assert
that the Wisconsin statutory system has established
classifications of claimants who may sue the state and
that to deny such permission to those who claim tort
damages not derived from accidents involving state owned

---

[17] (1953), 264 Wis. 211, 213, 58 N. W. 2d 698, quoting from 16
C. J. S., *Constitutional Law,* p. 1496, sec. 709.

[18] *Supra,* footnote 9, at page 688.

aircraft [19] or automobiles [20] is essentially arbitrary. This equal protection argument has been rejected in two recent Wisconsin cases. In *Forseth v. Sweet* [21] the court quoted with approval from *Apfelbacher v. State* as follows:

" 'Waiver of immunity from suit by a state, in such cases as the legislature may deem proper, cannot be held to be a denial of the equal protection of the laws to persons within its jurisdiction. The immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure. No constitutional right of its residents is violated whatever its action in that regard may be.' "

In *Chart v. Gutmann* the court again rejected the equal protection argument. It found implicitly that restricting tort suits to those cases involving state owned and operated apparatus was a reasonable classification. [22] The defendants in their brief argue persuasively that the allowance of tort suits against the state in the case of accidents involving state owned and operated automobiles and airplanes is supported by a rational justification. Such accidents involve nondiscretionary actions and suits of this nature would never pose any obstruction to government policy. These are the types of suits where recovery could normally be had against the employee driving or operating the vehicle or aircraft.

Due process challenges were also raised in the *Forseth* and *Chart Cases*. They were rejected but without any specific discussion. The rejection of the due process challenge was implicitly based on the holding that a person does not have any "right" to sue the state. The defendants in their brief also point out that in reality the plaintiffs are not denied a hearing. Ch. 16 of the Wis-

[19] Sec. 114.065, Stats.

[20] Sec. 345.05 (4), Stats.

[21] *Supra,* footnote 9, at page 689; *Apfelbacher v. State* (1915), 160 Wis. 565, 577, 152 N. W. 144.

[22] *Supra,* footnote 14, at page 436.

consin Statutes provides a procedure for submitting a claim to a state claims commission which may recommend to the legislature that the claim be paid. The plaintiffs also could obtain the help of their state representatives in introducing a private bill for their relief.

There are also many federal cases which maintain that the federal government is immune from suit and that it may define the conditions under which it will permit actions against itself.[23] In *Pflueger v. United States* [24] the petitioner claimed that one section of the Trading with the Enemy Act was unconstitutional in that it limited claims to the amount recovered by the custodian on the sale of the seized assets and did not allow "just compensation." The Court of Appeals for the District of Columbia said:

". . . But we need not pass on the point, for the immunity of the sovereign from suit is paramount, even over rights founded on the Constitution.

" 'For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. . . . The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. . . .'
. . . . ''

Therefore, we must conclude that the plaintiffs' constitutional challenges are without merit.

---

[23] *Kendall v. United States* (1882), 107 U. S. 123, 2 Sup. Ct. 277, 27 L. Ed. 437; *Soriano v. United States* (1957), 352 U. S. 270, 77 Sup. Ct. 269, 1 L. Ed. 2d 306; *Honda v. Clark* (1967), 386 U. S. 484, 87 Sup. Ct. 1188, 18 L. Ed. 2d 244; *Broadway Open Air Theatre v. United States* (4th Cir. 1953), 208 Fed. 2d 257; *Driggers v. United States* (D. C. So. Carolina 1970), 309 Fed. Supp. 1377; *Ponderendolph v. Derry Township* (D. C. Pa. 1971), 330 Fed. Supp. 1346.

[24] (U. S. Ct. App. D. C. 1941), 121 Fed. 2d 732, 735.

*4. Does sec. 270.58, Stats., create a cause of action against the state in contract?* The contract theory advanced by the plaintiffs is the only new question presented to the court in this case. The defendants initially challenge the right of the plaintiffs to assert this argument on appeal. They assert that this "theory" was never presented to the trial court when the hearing on demurrer was held. As mentioned earlier, the record does not contain the briefs submitted or the arguments presented to the court during the hearing on the defendants' demurrer. However, the memorandum decision summarizes the position of the plaintiffs, and it is logical to conclude that since the memorandum decision does not refer to the statutory argument involved here, the plaintiffs did not make this argument before the trial court. However, the issues involved are purely questions of law involving statutory construction and since this "theory" may be advanced again, it is well to reach the merits of this argument despite the fact that it is probably raised for the first time on appeal.

The plaintiffs essentially argue that the *Forseth* conclusion that sec. 270.58, Stats., did not contemplate any new exposure to substantive liability was too broad a statement. They also feel that the statement in *Chart v. Gutmann* that "sec. 285.01, Stats., does not now, nor has it ever provided a procedure by which tort claimants may sue the state" is also overbroad. The plaintiffs assert that the court in those two cases was not presented with the argument that the plaintiffs might have a contract action growing out of a tortious injury and thus did not consider that possibility when it made those statements. The plaintiffs argue that sec. 270.58 makes the state an insurer of the tortious employees and that therefore the state may be proceeded against under the Wisconsin statutory scheme which allows "direct action" against insurers. Sec. 204.30 (4) makes an insurer under any

bond or policy of insurance covering liability to others by reason of negligence directly liable to the persons entitled to recover against the insured. Sec. 260.11 provides that in any action for damages caused by negligence, any insurer which has an interest in the outcome of a controversy adverse to the plaintiff is a proper party defendant.

The plaintiffs indicate that the main issue is not whether *any* substantive rights are created by sec. 270.58, Stats., or whether in a proper case such rights are enforceable against the state, but whether such rights may be enforced in anticipation of a judgment against the employees by direct action. One may agree that the state under sec. 270.58 is acting in reality as an indemnifier of its employees. However, the question is whether the state is an "insurer" within the meaning of sec. 204.30 (4) and sec. 260.11 by virtue of the provisions of sec. 270.58.

Although it is immaterial for purposes of sec. 204.30 (4), Stats., whether an insurance policy is denominated an indemnity or a liability policy,[25] it is clear that ch. 204 is intended to apply to commercial insurers licensed by the state to conduct business in Wisconsin. Whatever rights which are created by sec. 270.58 are statutory and do not sound in contract. The state has issued no "policy of insurance" nor has it entered any agreement with the employees involved here. It is clear that the state could repeal this statute at any time without depriving state employees of any vested rights.

Sec. 285.01, Stats., has been construed to be a consent by the state to be sued on those claims which if valid would render the state a debtor, and not on equitable claims based on torts.[26] However, suit is authorized

---

[25] *Ducommun v. Inter-State Exchange* (1927), 193 Wis. 179, 186, 212 N. W. 289, 214 N. W. 616.

[26] *Holzworth v. State, supra,* footnote 14; *Townsend v. Wisconsin Desert Horse Asso., supra,* footnote 10.

only after the legislature has refused to allow the claim. Thus, even if a claim cognizable under sec. 285.01 were created by virtue of sec. 270.58, no suit could be brought until after a refusal to pay a judgment obtained against a state employee. In any event, sec. 270.58 does not render the state a debtor of either state employees or injured citizens who recover judgments against such employees. Whatever duty exists on the part of the state is statutory and enforceable, if at all, through an action in mandamus.

In *Mazurek v. Skaar* [27] this court discussed sec. 21.13, Stats., which is similar to sec. 270.58, in that the state agrees to pay judgments obtained against national guardsmen prosecuted for any act performed while in the performance of their military duty and in pursuance thereof if the guardsman is found to have acted in good faith. The case states:

"Within the limits dictated by the statute, the state has agreed to become the insurer of the guardsman while performing military duty." [28]

*Mazurek* then goes on to discuss whether sec. 21.13 is applicable to a case where the state is also an employer and the injured party has received workmen's compensation.

In the discussion of the applicability of sec. 21.13, Stats., the court clearly indicated that the payment under sec. 21.13 was "statutorily required" and not based on a contractual agreement although the statement quoted above uses the words "the state *has agreed* to become the insurer of the guardsmen." (Emphasis supplied.) This wording may give the impression of supporting the plaintiffs' position. Perhaps it would have been better to use the phrasing "has agreed to act like an insurer." The fact that the state may assume obligations which normally are performed by insurance companies under

[27] (1973), 60 Wis. 2d 420, 210 N. W. 2d 691.
[28] *Id.* at page 426.

contracts of insurance does not mean that the state is an "insurer" within the meaning of other statutes concerning insurers. It is possible that the state may be considered an insurer under a particular statute depending on the legislative intent. However, it is clear that the state was not intended to be an insurer within the meaning of secs. 204.30 (4) and 260.11 by virtue of the statutory obligation contained in sec. 270.58.

*By the Court.*—Order and judgment affirmed.